# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

DAVID M. LARSEN,

                Appellant,

      v.                                                   Case No. 10-CV-204

TERI JENDUSA-NICOLAI, DAVID M. NICOLAI,
A.M.L., and H.M.L., minors by their Guardian
Ad Litem, Patrick O. Dunphy,

                Appellees.

_____

# ORDER

This case arises out of appellant-debtor's assault, kidnapping and attempted murder of his ex-wife, appellee Teri Jendusa-Nicolai ("Ms. Jendusa-Nicolai"). *See State v. Larsen*, 2007 WI App 147, 302 Wis.2d 718, 736 N.W.2d 211; *see also United States v. David M. Larsen*, No. 08-3088 (7th Cir. Aug. 4, 2010). On March 11, 2010, appellant David M. Larsen ("Larsen") appealed a decision by the United States Bankruptcy Court for the Eastern District of Wisconsin ("bankruptcy court") holding that state court tort judgments rendered against Larsen were not dischargeable under 11 U.S.C. § 523(a)(6), which precludes a debtor from discharging a debt caused by the debtor's willful and malicious injury to a person or property. In an adversary proceeding the bankruptcy court denied discharge and entered summary judgment in favor of the creditor-appellees because it concluded that the state court judgment determined that Larsen's conduct was willful and malicious, and that

therefore, issue preclusion barred Larsen from attempting to litigate the issue in a bankruptcy proceeding. The court affirms the decision of the bankruptcy court.

## BACKGROUND

The facts are as follows: On the three year anniversary of their divorce, Ms. Jendusa-Nicolai went to the home of her ex-husband, Larsen, to pick up their daughters. After her arrival, Larsen locked the children in a bedroom and attacked Ms. Jendusa-Nicolai, beating her with a baseball bat. He bound her with duct tape to prevent any attempt at escape, stripped her of her pants, shoes, and socks, stuffed her in a garbage can partially filled with snow, and placed the can in the unheated cargo box of his pickup truck. Larsen then drove his ex-wife to an unheated storage locker he had rented, placed boxes on top of the garbage can to prevent her escape, and left. Ms. Jendusa-Nicolai remained bound, in the snow-filled garbage can, for over 18 hours before she was rescued. As a result, Ms. Jendusa-Nicolai suffered many injuries, including severe bruising and contusions, facial lacerations, hypothermia, the loss of all ten of her toes to frostbite, and a miscarriage.[1]

Larsen was convicted in state court of attempted first-degree intentional homicide and interference with custody and sentenced to 37 years in state prison. *See Larsen*, 2007 WI App147, ¶ 1. Because Larsen had transported Ms. Jendusa-Nicolai across state lines, he was also charged in federal court, and convicted of

---

[1] The facts are taken from the bankruptcy court's decision. *Jendusa-Nicolai v. Larsen (In re Larsen)*, 422 B.R. 913 (Bankr.E.D.Wis. 2010).

kidnapping and interstate domestic violence. *United States v. Larsen*, No. 04-CR-29 (E.D. Wis. Aug. 7, 2008). Appellant was sentenced to life imprisonment for the kidnapping offense and 120 months on the domestic violence offense to run concurrently to the state sentence. *Id.*

Ms. Jendusa-Nicolai and her family then commenced a civil suit against Larsen for compensatory and punitive damages. *In re Larsen*, 422 B.R. at 917.[2] A bench trial in the civil action was held, with the debtor present and represented by counsel. *Id.* The Racine County Circuit Court ruled in favor of the plaintiffs on their claims for assault and battery, intentional infliction of emotional distress, false imprisonment, and loss of society and companionship. *Id.*[3]

On March 13, 2009, Larsen filed a voluntary petition for Chapter 7 bankruptcy. The appellees brought an adversary proceeding objecting to the dischargeability of certain obligations incurred by Larsen – specifically the state court judgment for damages. The appellees moved for summary judgment asserting that they were entitled to a nondischargeability judgment pursuant to 11 U.S.C. § 523(a)(6).[4] On January 29, 2010, an order for nondischargeable judgment was entered. The

---

[2]Because copies of the state court civil judgment and the transcript from the state court proceedings are not included in the record on appeal, the court's citation to the state court case is based on information provided to the court by the bankruptcy court's decision in adversary number 09-2231, *In re Larsen*, 422 B.R. 913.

[3]On July 22, 2008, the state court rendered judgment against Larsen, and in favor of Ms. Jendusa-Nicolai and her family, as follows: Ms. Jendusa-Nicolai, $3,410,785.38; David M. Nicolai (husband), $201,839.54; the children of Ms. Jendusa-Nicolai and Larsen, $50,459.89 each.

[4]Section 523(a)(6) of the Bankruptcy Code provides that a debt "for willful and malicious injury by the debtor to another" is not dischargeable. 11 U.S.C. § 523(a)(6).

bankruptcy court held that issue preclusion precluded relitigation of the state court tort judgments which established a willful and malicious injury under § 523(a)(6).

## DISCUSSION

### I.      Procedural Defects

As an initial matter, the court is obliged to discuss the procedural defects in Larsen's appeal because the deficiencies affect the court's review.  On February 8, 2010, Larsen properly and timely filed, in the bankruptcy court, a notice of appeal from the bankruptcy court's decision in adversary case number 09-2231. (Docket #1).[5]  Pursuant to Federal Bankruptcy Rule 8006, within fourteen days of filing the Notice of Appeal with the bankruptcy court, Larsen was required to file a designation of items to be included in the record on appeal as well as a statement of the issues to be presented.  Fed. R. Bankr. P. 8006.  Larsen failed to do so.[6]  On August 5, 2010, over six months after filing his Notice of Appeal, Larsen filed a Motion for Extension of Time to file a designation of items to be included in the record on appeal as well as a purported designation of items. (Docket #9).  Not only is such a

---

[5]Larsen is not represented by counsel in this appeal and, therefore, his pleadings are entitled to a less strict construction than that accorded the pleadings of litigants represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596 (1972).  Though the court has applied a less stringent standard in its review of Larsen's filings, the court notes for the record, that petitioner appears  to be intelligent and capable of managing his own litigation in various courts.  Indeed, he navigated his bankruptcy proceedings without counsel.  His litigation management belies claims of inexperience with the legal process and the bankruptcy rules on appeal.

[6]The bankruptcy court, on its own initiative,  transmitted a copy of the record to the clerk of the district court. Fed. R. Bankr. P. 8007(b). Therefore, the district court's record consists of a copy of the notice of appeal, the bankruptcy court's memorandum and decision, the bankruptcy court's order for nondischargeable judgment, the judgment, the main case docket sheet, and the adversary case docket sheet. (*See* Docket #1).

filing months overdue, but it follows an inappropriate procedure and is substantively lacking. First, a designation of items and a statement of the issues should be filed with the clerk of the *bankruptcy court,* not the clerk of the district court. Fed. R. Bankr. P. 9001(3). Because Larsen's August 5, 2010 filing was filed with the district court clerk, it did not effectuate the transfer of the entire record to this court. Furthermore, Larsen's designation of items simply provides excuses for his failure to designate the record at the outset of this appeal, including that he assumed the record would be forwarded to the district court as it is in criminal cases.[7] Larsen then requests that the entire record be included on appeal. This designation of items for the record is insufficient. The result is that this court has before it only the bankruptcy court's decision from which to determine whether the bankruptcy court erred. This is inherently problematic because the bankruptcy court's decision is dependent upon an analysis of the state court's civil judgment and findings of fact. Thus, the court is limited to the excerpts of the state court transcript and judgment that the bankruptcy court cited in its decision. Such circumstances do not facilitate a meaningful review. Indeed, Larsen's briefs fail to cite to the record other than to reference page numbers of the bankruptcy court's decision, thereby further hindering the court's ability to fully analyze the record and the sufficiency of the bankruptcy

---

[7]The parties are expected to know Bankruptcy Rule 8006's requirements. No notice of the need for a record designation or statement of issues is sent to the parties.

court's findings.[8]  It also appears that Larsen has failed to comply with Bankruptcy Rule 8010(1)(a), which requires a "statement of the facts relevant to the issues presented for review, with appropriate references to the record" to be included in the appellant's brief. Fed. R. Bankr. P. 8010(1)(a).  Though Larsen's initial brief has a heading labeled "Statement of the Facts," he merely lists the procedural history of the bankruptcy proceedings.  (Appellant's Br. 4). The court appreciates that Larsen's access to the necessary resources for managing this appeal is limited due to his financial circumstances and  incarceration, yet Bankruptcy Rule 8010 is significant because it serves a substantive function by providing the opposing party and the court an indication of "which flaws in the appealed order or decision motivate the appeal." *In re Gulph Woods Corp.*, 189 B.R. 320, 323 (E.D. Pa. 1995).

Accordingly, the appellees urge the court to dismiss Larsen's appeal due to his failure to comply with the rules governing bankruptcy appeals. (Appellees' Br. 11-12).  Bankruptcy Rule 8001(a) gives the court authority to dismiss an appeal for failure to comply with the rules. Though failure to comply with Rule 8006 is not jurisdictional, it may provide the basis for dismissal of an appeal. In *In re Thompson*, 140 B.R. 979 (N.D. Ill. 1992), *aff'd* 4 F.3d 997 (7th Cir. 1993), the bankruptcy court dismissed an appeal for just such a failure.  The court explained that "the burden of

---

[8]Not only has Larsen failed to properly designate items for inclusion in the record and to make a statement of the issues, he has also repeatedly requested extensions to file both his briefs. Though his limited access to the prison library and computers may have warranted an initial extension, Larsen's incessant untimeliness provides the court with further reason to consider dismissing his appeal based on his violation of the bankruptcy rules.

providing [the district court] with an adequate record on appeal is squarely on the appellant." *Id.* The court went on to note that "'unless the record that is brought before the court affirmatively shows the occurrence of the matters upon which the appellant relies for relief, the appellant may not urge those matters on appeal.'" *Id.* (quoting 9 Lawrence King, Collier on Bankruptcy ¶ 8006.04 (1992)). The court further stated that an adequate designation of issues on appeal is necessary to put the appellee on notice as to which issues it must defend against and whether the appellant's designation of issues will produce a record adequate for the reviewing court. *Id.*

Other courts have found it appropriate to dismiss a bankruptcy appeal for similar shortcomings. *See In re Champion,* 895 F.2d 490, 492 (8th Cir. 1990) (holding that a district court did not abuse its discretion by dismissing an appeal where the appellant failed to file a designation of the record or a statement of the issues as required by Bankruptcy Rule 8006); *see also In re Fitzsimmons*, 920 F.2d 1468, 1472 (9th Cir. 1990) (dismissal proper where corporation failed to timely serve designation of the record and failed to make a written request for the record).

As a general rule, when determining whether to dismiss an appeal based on noncompliance with nonjurisdictional bankruptcy procedure requirements, the court must consider: (1) whether alternative measures in lieu of dismissal are available; and (2) whether the conduct giving rise to the dismissal was caused by the party's attorney. *Matter of Thompson*, No. 92-2587, 1993 WL 347181, at *4 (7th Cir. 1993)

(citing *Greco v. Stubenberg*, 859 F.2d 1401, 1404 (9th Cir. 1988)). Larsen is proceeding *pro se,* and, therefore, he is responsible for the conduct giving rise to the dismissal. Furthermore, the court has considered alternative measures in lieu of dismissal. The court delayed the disposition of this action, allowing – though admittedly not affirmatively granting – appellant the opportunity on numerous occasions to extend the time in which to file his briefs. Six months after the deadline for designation of the record, Larsen finally attempted to comply with the bankruptcy rules on appeal. As the court has noted, this attempt was unsuccessful. Therefore, the court finds it would be appropriate to dismiss Larsen's appeal simply based on his failure to comply with the rules governing bankruptcy appeals. However, in the interest of completeness, the court will continue, as best it can in light of the incomplete record now before it, its analysis of Larsen's appeal on the merits.

## II.    Standard of Review

This court has jurisdiction to hear an appeal of a bankruptcy court's order under 28 U.S.C. § 158(a). A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo. In re Smith*, 286 F.3d 461, 464-65 (7th Cir. 2002). In this case, the bankruptcy court granted summary judgment to appellees. *See* Fed. R. Bankr. P. 7056(c). The grant of summary judgment in bankruptcy proceedings entails the resolution of a legal conclusion and, therefore, this court's review is *de novo. Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir. 1999). To prevail on a motion for summary judgment, appellees

must show that there is no genuine issue as to any material fact, and that they are entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). In determining whether Larsen has created a genuine issue of material fact, the court construes all facts and reasonable inferences to be drawn therefrom in his favor. *See id.* at 257-58.

## III.    Issue Preclusion

According to his briefs, Larsen's principal issue on appeal is that the bankruptcy court erred by finding that issue preclusion barred the relitigation of the state court's findings, which he claims do not establish a willful and malicious injury for purposes of § 523(a)(6).

The doctrine of issue preclusion limits the litigation of issues that have been decided in a previous action, provided the party against whom the prior decision was asserted had a full and fair opportunity to litigate that issue in the earlier proceeding. *See Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411 (1980); *see also Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998). The Supreme Court has concluded that issue preclusion applies in dischargeability proceedings in bankruptcy. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654 (1991); *see also Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir. 1987). Furthermore, federal courts must apply the forum state's law of issue preclusion when determining the preclusive effect of a state court judgment and in determining the dischargeability of debt. 28 U.S.C. § 1738; *Rocky Mounty Chocolate Factory*,

136 F.3d at 1136; *Bukowski v. Patel*, 266 B.R. 838, 842 (E.D. Wis. 2001) (citing *In re Bulic*, 997 F.2d 299, 304 n. 6 (7th Cir. 1993)). Therefore, the court will apply Wisconsin law to determine whether issue preclusion applies in this case.

Under Wisconsin law, issue preclusion limits the relitigation of issues that have been contested in a previous action between the same or different parties. *Michelle T. by Sumpter v. Crozier*, 173 Wis.2d 681, 687, 495 N.W.2d 327, 329 (Wis. 1993). The doctrine is intended to prevent parties from revisiting issues "actually litigated in a previous action." *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis.2d 210, 219, 594 N.W.2d 370 (Wis. 1999). The preclusive effect of prior litigation arises where "'an issue is actually and necessarily determined by a court of competent jurisdiction.'" *Id.* (quoting *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970 (1979)); *see also Robinson v. City of West Allis,* 239 Wis.2d 595, 614-15, 619 N.W.2d 692 (Wis. 2000). The party asserting issue preclusion has the burden of establishing that the doctrine should be applied. *Paige K.B. ex rel. Peterson*, 226 Wis.2d at 219. In addition, where appropriate, courts must conduct a "fundamental fairness" analysis to determine whether it is equitable to apply issue preclusion in a given case and, in doing so, may consider a variety of factors. *Michelle T. by Sumpter*, 173 Wis.2d at 698.

Though the fundamental fairness analysis is generally a discretionary affair, courts may consider some or all of the following factors: 1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the

judgment; 2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; 3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; 4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and 5) are matters of public policy and individual circumstances involved that would render the application of issue preclusion to be fundamentally unfair, including adequate opportunity or incentive to obtain a full and fair adjudication in the initial action? *Michelle T. v. Crozier*, 173 Wis.2d at 689.

Larsen's appeal appears to focus on factor two of the fundamental fairness analysis as he argues the state court's finding of liability does not equate with a finding that he caused a willful and malicious injury under § 523(a)(6). Yet, Larsen's claims could also be construed as challenging the first part of the issue preclusion test – whether the issue was actually and necessarily determined. (Appellant's Reply Br. 3).[9] No matter how his challenge is construed, the main issue to be determined on appeal is whether issue preclusion precludes the dischargeability of

---

[9]Larsen frames the issue on appeal as an "identity of issues" challenge. (Appellant's Reply Br. 3). This phrase likely stems from the older, formalistic test that Wisconsin courts used to determine whether issue preclusion applied. *See State ex rel. Flowers v. DHSS,* 81 Wis.2d 376, 387, 260 N.W.2d 727 (1978) ("The four elements of the [issue preclusion] test have been identified as including: (1) a valid, final judgment; (2*) identity of issues*; (3) privity of parties; and (4) issues which have been litigated and necessarily determined." ) (emphasis added). However, this test has since been replaced with the looser, equities-based test articulated by the court above. The test asks, in part, whether the issue actually has been litigated and whether applying issue preclusion comports with the principles of fundamental fairness. *Michelle T. v. Crozier,* 173 Wis.2d at 687-89.

the Wisconsin judgment pursuant to § 523(a)(6).  The bankruptcy code provides: "A discharge [under the bankruptcy laws] does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  Thus, in order for issue preclusion to apply, the issues of willfulness and maliciousness must have been determined by the Wisconsin judgment. Hence, Larsen cannot discharge the Wisconsin judgment if his conduct giving rise to that judgment was determined to be willful and malicious.

Larsen asserts that though his conduct may have been intentional, the "willfulness" standard requires that he actually intend not simply to cause harm or injury in general, but rather to cause the *actual* injury suffered.  Larsen appears to narrow his challenge in this respect to only one of Ms. Jendusa-Nicolai's injuries resulting from his conduct – the frostbite and subsequent amputation of her toes. (Appellant's Br. 7).  He also challenges whether the state court judgment established a willful and malicious injury with regard to the derivative claims of Ms. Jendusa-Nicolai's husband and children. Consequently, the court must determine the meaning of a willful and malicious injury under § 523(a)(6) to reach a conclusion as to whether the issue of willful and malicious injury was determined in state court.

A.    **The Meaning of Willful and Malicious Injury**

"Malicious," as used in § 523(a)(6) means in conscious disregard of one's duties or without just cause or excuse. *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994).  It does not require ill-will or a specific intent to cause harm. *Id.*

"Willful" means deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974 (1998). *Geiger* held that the § 523(a)(6) exception is limited to conduct associated with "intentional torts" and does not encompass conduct that is merely negligent.  The Supreme Court explained:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself."

*Geiger*, 523 U.S. at 61-62. Thus, the Supreme Court's holding in *Geiger* specified that "willful" for purposes of § 523(a)(6) means actual intent to cause injury, not merely the commission of an intentional act that leads to injury.  Larsen contends that though his conduct in general may have been intentional, he never intended for his ex-wife to lose her toes, and hence, this "injury" was not willful. Larsen's argument fails in several respects.

First, Larsen's theory of "willful injury" is incorrect because he confuses the concept of injury with that of damages.  "Injury" means the violation of another's legal right, or the infliction of an actionable wrong. Black's Law Dictionary (9th ed. 2009). Accordingly, the invasion by the debtor of a legally protected right of the victim constitutes the "injury," while the magnitude of the injury is measured by the amount

of damages. *See ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 454 (Bankr. N.D. Ind. 2001). Therefore, the "true injury occurs on an abstract level." *Id.* As such, courts should focus on the invasion of the abstract right, as opposed to the resulting damage. For instance, as the court explains in *In re Russell*: "in a case involving assault and battery, the true injury is not the creditor's broken jaw, but rather, the unconsented to touching that produced the broken jaw. Consequently, the question to ask is not whether the debtor intended to break the creditor's jaw, but instead, whether the debtor intended to hit the creditor." *Id.* As applied to this case then, the true injury is not Ms. Jendusa-Nicolai's amputated toes, but rather the unconsented to touching that produced the amputated toes. In sum, the state court must have determined that Larsen intended the touching that produced the amputated toes, not that he actually intended for Ms. Jendusa-Nicolai's toes to become frost-bitten and later amputated.

Moreover, Larsen's arguments are unpersuasive because in cases involving the extreme conduct at issue here, it is impossible to separate the "conduct" of assault, battery, and intentional infliction of emotional distress from the "injury" of these torts when considering the tortfeasor's intent. "In other words, performing a medical procedure [as in *Geiger*] and driving an automobile are activities that can be executed intentionally, but in a manner that is reckless or negligent with regard to the outcome." *Star's Edge, Inc. v. Braun (In re Braun)*, 327 B.R. 447, 450-51 (Bankr. N.D.Cal. 2005). On the other hand, activities such as beating your wife with a

baseball bat or stripping her of her clothes and locking her in a garbage can filled with snow do not have uncertain or variable outcomes. "While a medical procedure can result in either healing or harm, and a physician may cause harm by negligence," assault, battery and intentional infliction of emotional distress are categorically harmful activities. *Id.*

Larsen further argues that the bankruptcy court erred by using an objective substantial certainty test to determine his intent to cause injury to his former spouse's husband and his own children. Though *Geiger* eliminated the possibility that "willful" encompasses negligent or reckless torts, the holding did not define the scope of the term "intent" utilized to describe willful conduct. *Mut. Mgmt. Servs., Inc. v. Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 757 (Bankr. N.D.Ill. 2010); *Zamora v. Jacobs (In re Jacobs),* 403 B.R. 565, 581 (Bankr. N.D.Ill. 2009). Recent decisions, however, have generally found that either a showing of subjective intent to injure the creditor or a showing of subjective knowledge by the debtor that injury is substantially certain to result from his acts can establish the requisite intent required by *Geiger.* *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 463-65 (6th Cir. 1999); *Tex. By & Through Board of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 823 (5th Cir.1998); *Su v. Carrillo (In re Su)*, 290 F.3d 1140 (9th Cir. 2002); *Fidelity Fin. Servs. v. Cox (In re Cox)*, 243 B.R. 713, 719 (Bankr. N.D.Ill. 2000); *Bukowski v. Patel*, 266 B.R. 838, 844 (E.D. Wis. 2001). However, at least one court has employed an objective standard under which the "willfulness" requirement is

satisfied if there is either a subjective intent to cause injury or an *objective* substantial certainty that the debtor's conduct will cause injury. *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir. 1998). The bankruptcy court did rely on this objective standard in determining that the state court judgment established a willful and malicious injury for purposes of the derivative claims. *In re Larsen*, 422 B.R. at 923.

The Seventh Circuit has not yet addressed this issue. Nevertheless, this court finds it unnecessary to expressly decide which standard, whether subjective or objective, should be applied because the case at hand does not turn on this issue. As the court will subsequently discuss, the derivative claims are connected to the injury caused to Ms. Jendusa-Nicolai. Consequently, the court's inquiry should focus solely on whether the injury caused to Ms. Jendusa-Nicolai was willful and malicious, not on whether a separate injury caused to the derivative appellees was willful and malicious. Because this court finds the state court judgment established that Larsen had actual intent to cause injury to Ms. Jendusa-Nicolai, the substantial certainty test is inapplicable.

For the reasons set forth above, the court finds Larsen's arguments regarding the appropriate standard for "willfulness" unpersuasive. The intent to cause a specific or particularized "injury," such as frostbite to a person's toes, is not required for a finding of "willful injury." The focus of the court's inquiry should be on the true

injury – the invasion of the individual's personal rights – rather than the specific damages resulting therefrom.

## B.    State Court Determination

### 1.    Claims of Ms. Jendusa-Nicolai

In this case, the state court found not only that Larsen intended to cause his ex-wife physical and severe emotional harm but he also intended to kill Ms. Jendusa-Nicolai. *In re Larsen*, 422 B.R. at 918-19. Larsen argues that the state court never found he intended Ms. Jendusa-Nicolai to lose her toes, and, therefore, it did not determine he caused a willful injury in this respect. However, as previously discussed, the state court need not make a finding that the debtor intended to cause the resulting damage, but rather that he intended to cause the abstract injury – an invasion of the victim's legal rights. In this case, the court found Larsen liable for assault, battery, and intentional infliction of emotional distress and, as a part of these findings, explicitly found that Larsen intended to cause harm to Ms. Jendusa-Nicolai. Consequently, this court concludes that the state court's findings with regard to the intentional nature of Larsen's conduct equate with a finding of a willful injury for purposes of § 523(a)(6).

Furthermore, the state court also awarded Ms. Jendusa-Nicolai punitive damages. Under Wisconsin law, punitive damages are only available when a defendant "acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." Wis Stat. § 895.043(3). Thus, the state court awarded

punitive damages either because Larsen acted maliciously or in an intentional disregard of Ms. Jendusa-Nicolai's rights. In either case, the court necessarily found that Larsen's conduct was willful, i.e., that he intended to cause harm to his ex-wife. If the court found that Larsen acted maliciously, it obviously concluded that he intended to injure Ms. Jendusa-Nicolai. If the court found that Larsen acted in intentional disregard of Ms. Jendusa-Nicolai's rights, the willfulness requirement is also satisfied because one who intentionally violates another's legal rights acts with intent to cause injury. *Bukowski v. Patel*, 266 B.R. 838, 845 (E.D. Wis. 2001) (citing *In re Singer Co., N.V.*, 262 B.R. 257, 264 (Bankr. S.D.N.Y 2001)). Accordingly, the state court could not have awarded punitive damages unless it necessarily determined the debtor's conduct was willful and malicious.

Independent of the punitive damages finding, the state court also discussed the malice involved in the injuries caused by Larsen, stating "the degree of malice here was absolute hatred, absolute malice, to strike [Ms. Jendusa-Nicolai] repeatedly even when she tried to get out to push her back in the can and beat her again, threaten to shoot her . . ." *In re Larsen*, 422 B.R. at 919. Moreover, the state court discussed that Larsen's conduct was without just cause or excuse. *In re Thirtyacre*, 36 F.3d at 700. For example, the state court recognized that the ex-spouses knew how to "push each other's buttons and did so." *In re Larsen*, 422 B.R. at 919. However, the court continued that "it does not in any way lessen or eliminate

the finding that the degree of malice here was absolute hatred . . ." *Id.*  Therefore, the state court determined that Larsen's conduct caused a malicious injury.

## 2.    Derivative Claims

Larsen also disputes that the state court's determination established he caused willful and malicious injury to Ms. Jendusa-Nicolai's husband and two daughters – David M. Nicolai ("Mr. Nicolai") and A.M.L. and H.A.L. However, this argument misses the point. The state court entered judgment and awarded damages to these three appellees for derivative claims of loss of society and companionship and loss of consortium. *Id.* at 922.  What Larsen's argument fails to account for is that these appellees' claims are *derivative* claims, meaning they are derived from another claim. Indeed, a derivative action is defined as "a lawsuit arising from an injury to another person." Black's Law Dictionary (9th ed. 2009).  Therefore, in this case, Ms. Jendusa-Nicolai's injury, which the state court found was willful and malicious, gave rise to the claims of her husband and her children.

Moreover, by its plain language, § 523(a)(6) excepts from discharge a debt for willful and malicious injury by the debtor to another entity or to the property of another entity. The term "entity" includes a "person." 11 U.S.C. § 101(15). The term "person" includes an "individual." 11 U.S.C. § 101(41). In terms of the derivative claims, the individual the debtor injured was Ms. Jendusa-Nicolai.  There is nothing in section 523(a) requiring that the injured individual be the person whose debt is excepted from discharge under § 523(a)(6). Section 523(a)(6) requires only that

there be a debt owing by the debtor and that such debt be "for willful and malicious injury by the debtor to another entity."  Here, the debtor is obligated to his former wife's husband and his own daughters under the state court judgments in their favor. The debt arises from the willful and malicious injury by the debtor to Ms. Jendusa-Nicolai.[10]

## CONCLUSION

In sum, the bankruptcy court correctly concluded the state court judgment determined that Larsen's conduct caused a willful and malicious injury pursuant to § 523(a)(6). Moreover, the bankruptcy court did not err by deciding that the state court judgments had preclusive effect on the question of nondischargeability of the debts at issue under § 523(a)(6).  Thus, after analysis of all potential issues set forth by Larsen in his appeal, the court finds no error on the part of the bankruptcy court warranting reversal or remand and, therefore, affirms its decision.

Accordingly,

---

[10]The bankruptcy court ultimately and correctly concluded that the tort judgments of Mr. Nicolai and the two minors should be excepted from discharge because they directly resulted from Larsen's "truly heinous, willful and malicious injury to Ms. Jendusa Nicolai." *In re Larsen*, 422 B.R. at 923.  However, the bankruptcy court's reasoning strayed further than necessary because it premised its findings on an injury suffered by the derivative appellees, rather than on an injury of Ms. Jendusa-Nicolai.  Thus, the bankruptcy court overlooked the very nature of the derivative claim and its application to § 523(a)(6). Nevertheless, though the legal analysis differs, the final outcome is proper.  Therefore, the court shall affirm the bankruptcy court's decision.

**IT IS ORDERED** that the bankruptcy court's grant of summary judgment in favor of the creditors' § 523(a)(6) claims is **AFFIRMED**;

**IT IS FURTHER ORDERED** that all appellant's pending motions (Docket #'s 3, 4, 6, 9, and10) be and the same are hereby **DENIED** as moot; and

**IT IS FURTHER ORDERED** that this appeal be and the same is hereby **DISMISSED.**

The clerk of court is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of December, 2010.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge